FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 04 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
M.A., an infant by his Father and Natural
Guardian JEFFREY ASHEAR,

              Plaintiffs,

- against -

NRA GROUP, LLC dba NATIONAL
RECOVERY AGENCY,

              Defendant.
------------------------------------------------------------x

OPINION & ORDER

17-cv-7483 (NG)(RLM)

GERSHON, United States District Judge:

Plaintiff M.A., an infant, by and through his father and natural guardian, Jeffrey Ashear, moves for summary judgment against defendant NRA Group, LLC, doing business as National Recovery Agency, for fifty-five violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(3), that occurred between September 14, 2016 and June 9, 2017. For the reasons that follow, the motion is granted.

I.    **Factual Background**

Unless otherwise noted, the facts recited here are undisputed. Plaintiff is an eleven-year-old child whose cell phone number is (917) 974-4187. He has used (917) 974-4187 as his phone number since August 11, 2016, when his grandmother bought him a phone as a present. Plaintiff's mother is the named representative on the account and picked up the phone from Verizon for her son.[1] Starting on September 14, 2016, plaintiff began receiving calls from defendant. These calls were an attempt by defendant to reach a debtor with the initials V.R., with no known connection

---

[1] While defendant argues in its 56.1 statement that plaintiff never "owned the telephone number" because plaintiff's mother was the named representative on the account, it neither challenges plaintiff's standing, nor disputes that plaintiff was the end-user of the phone number for the relevant period.

1

to plaintiff. While the parties dispute whether V.R. provided express consent to be reached at (917) 974-4187, it is undisputed that plaintiff never consented to receiving calls from defendant.

Between September 14, 2016 and June 9, 2017, defendant placed fifty-five calls to plaintiff.[2] Based on the testimony of defendant's chief executive officer, Steven C. Kusic, on those fifty-five occasions, the defendant's automated dialing system detected a specific electronic tone from Verizon's answering service, plaintiff's phone service provider. After hearing that specific electronic tone, defendant's telephony system confirmed that a connection had been established with Verizon and left or attempted to leave fifty-five prerecorded messages on plaintiff's phone. Indeed, defendant does not genuinely dispute that eight calls to plaintiff resulted in prerecorded voicemail messages. Nor does it dispute that it *attempted* to leave prerecorded voice messages on all fifty-five occasions. Instead, defendant argues that plaintiff has not demonstrated that the remaining forty-seven call attempts actually reached plaintiff's phone.

## II. Summary Judgment Standard

Summary judgment is appropriate where the "movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Supreme Court has clarified, however, that this does not mean that *any* factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

---

[2] For the purposes of this motion, plaintiff does not dispute that he never answered any call from defendant and therefore never asked defendant to stop calling him, nor informed defendant that V.R. no longer used the telephone number.

2

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### III. Discussion

Plaintiff's claims are brought under the Telephone Consumer Protection Act, which provides:

> It shall be unlawful for any person . . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii). The statute was enacted by Congress in 1991 in response to consumers' outrage "over the proliferation of intrusive, nuisance calls to their homes from telemarketers." 47 U.S.C. § 227 note, Pub. L. No. 102-243, § 2(6). What began as a statute aimed at landlines and fax machines has since been extended to text messages and phone calls to cellular telephones as our primary methods of communication have evolved. Section 227 provides a private right of action for violations of the TCPA or its regulations. 47 U.S.C. § 227(b)(3).

The TCPA is essentially a strict liability statute that "does not require any intent for liability except when awarding treble damages." *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 134 (E.D.N.Y. 2015) (citations and quotations omitted). Defendants are liable for damages of $500 per negligent violation or $1,500 per willful violation. Plaintiff here does not seek treble damages.

As defined by the TCPA and its regulations promulgated by the Federal Communications Commission ("FCC"), to successfully prosecute a violation, a plaintiff must demonstrate that a defendant called or initiated a call to a number assigned to a cellular telephone service using a prerecorded voice message. *See Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013) ("[T]he TCPA clearly restricts the *making* of any call using an automatic telephone dialing system to a cellular phone[.]") (emphasis in original); 47 C.F.R. § 64.1200(a)(1) ("No person or entity may . . . *initiate* any telephone call . . . using an . . . artificial or prerecorded voice.") (emphasis added); *cf. Satterfield v. Simon & Schuster*, 569 F.3d 946, 954 (9th Cir. 2009) ("Congress intended to regulate the use of an [automatic telephone dialing system] to communicate or try to get into communication with a person by a telephone."). Consistent with this definition, plaintiff need not show that he answered the call, or even knew about the call. *See e.g., Castro*, 959 F. Supp. 2d 698; *Fillichio v. M.R.S. Assocs., Inc.*, 2010 WL 4261442 (S.D. Fla. Oct. 19, 2010); *Warnick v. Dish Network LLC*, 2014 WL 12537066 (D. Colo. Sept. 30, 2014).

Defendant, however, challenges this basic premise and argues that, because plaintiff "only produced eight voicemail messages purportedly from NRA," plaintiff has not proven sufficiently that "[the remaining forty-seven] call attempts successfully went through to [plaintiff's] cellular phone." In effect, defendant seeks to change the focus of the statute from the *making* of a call to the *receipt* of a call. As support, defendant relies heavily on a statement from *Mais v. Gulf Coast Collection Bureau, Inc.*, that "only dialed calls that successfully went through to Plaintiff's number will be counted." 944 F. Supp. 2d 1226, 1246 (S.D. Fla. 2013), *rev'd in part on other grounds*, 768 F.3d 1110 (11th Cir. 2014). Despite defendant's cited sentence, *Mais* held only that the defendant was not liable for damages for 15 attempted calls, not because they were not received by the plaintiff, but because they "failed to pass the business router and therefore these 15 calls

4

never left the [defendant's] system." *Id.* at 1245. *Mais* is therefore inapposite. In any event, even under defendant's reading of *Mais*, defendant's own testimony proves that the defendant's dialed calls "successfully went through" because defendant does not dispute that its dialer *actually* dialed plaintiff's phone number on fifty-five occasions and that a tone was heard from the plaintiff's side, indicating that the telephony system answered the phone.[3] In sum, defendant can find no succor in *Mais*.

Defendant has not produced any evidence or legal argument that contradicts or repudiates the unequivocal testimony of defendant's CEO that defendant called or initiated a call to a number assigned to plaintiff's cellular telephone service using a prerecorded voice message on fifty-five occasions without express consent. In this circumstance, the inferences raised by defendant amount to no more than the "mere existence of a scintilla of evidence" insufficient to establish a genuine dispute. *See Anderson*, 477 U.S. at 252. Viewing the record favorably to defendant, no reasonable jury could find that defendant did not make fifty-five telephone calls to plaintiff's cellular phone using a prerecorded voice message in violation of the TCPA.

---

[3] Defendant relies on a hypothetical question posed by defendant's CEO in his deposition about whether Verizon employed call-blocking technology that could have impeded defendant's system from leaving a voice message on plaintiff's phone *after* having sustained a connection. Such supposition does not rise to the level of evidence sufficient to defeat summary judgment. That plaintiff produced eight voice mail messages left by defendant supports the inference that Verizon did not employ such technology. However, even if that were not so, and Verizon *had* engaged call-blocking technology to thwart defendant's calls, defendant would nonetheless be liable for fifty-five violations of the TCPA. While defendant argues that a phone call is a "two-way communication," the statute is intended to eliminate calls such as these, which are prerecorded messages sent by an automated dialer—messages that were only ever intended by the sender to be one-sided. That a service provider or individual may have found a way to lessen the annoyance of robocalls does not diminish the liability of those that violate the statute.

5

## IV. Conclusion

For the reasons set forth above, summary judgment is granted for plaintiff. The Clerk of Court is directed to enter judgment for plaintiff in the amount of $27,500.

SO ORDERED.

/s/ Nina Gershon
**NINA GERSHON**
**United States District Judge**

June 3, 2019
Brooklyn, New York